UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

VIRGINIA STREET FIDELCO,          .
L.L.C., et al.,                   .
                                  .
          Plaintiffs,             .  Case No. 11-cv-02057
                                  .
vs.                               .  Newark, New Jersey
                                  .  November 14, 2017
ORBIS PRODUCTS CORPORATION,       .
et al.,                           .
                                  .
          Defendants.             .


              TRANSCRIPT OF TELECONFERENCE AND RULING
            BEFORE THE HONORABLE JAMES B. CLARK, III
                  UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

 For the Plaintiffs:      DIANE E. SAMMONS, ESQ.
                          Nagel Rice, LLP
                          103 Eisenhower Parkway
                          Roseland, NJ 07068
                          (973) 618-0400
                          dsammons@nagelrice.com

                          JOANNE VOS, ESQ.
                          Maraziti Falcon LLP
                          150 John F. Kennedy Parkway
                          Short hills, NJ 07932
                          (973) 912-6801
                          Jvos@mfhenvlaw.com



 Audio Operator:

 Transcription Service:      KING TRANSCRIPTION SERVICES
                             3 South Corporate Drive, Suite 203
                             Riverdale, NJ  07457
                             (973) 237-6080


Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

```
 1   (APPEARANCES continued)

 2
     For the Plaintiffs:     CHRISTINE L. PLACIDE, ESQ.
 3                           Maraziti Falcon LLP
                             150 John F. Kennedy Parkway
 4                           Short hills, NJ 07932
                             (973) 912-6802
 5                           Cplacide@mfhenvlaw.com

 6

 7   For the Defendants:     JOHN MARK SCAGNELLI, ESQ.
                             Scarinci & Hollenbeck, LLC
 8                           1100 Valley Brook Avenue
                             PO Box 790
 9                           Lyndhurst, NJ 07071
                             (201) 896-4100
10                           jscagnelli@scarincihollenbeck.com

11                           WILLIAM C. SULLIVAN, JR., ESQ.
                             Scarinci & Hollenbeck, LLC
12                           1100 Valley Brook Avenue
                             PO Box 790
13                           Lyndhurst, NJ 07071
                             (201) 896-4100
14                           Wsullivan@sh-law.com

15                           PATRICK JOSEPH MONAGHAN, JR., ESQ.
                             Beattie Padovano, LLC
16                           50 Chestnut Ridge Road
                             Suite 208
17                           Montvale, NJ 07645
                             (201) 799-2130
18                           pmonaghan@beattielaw.com

19                           FRANK EDWIN DERBY, ESQ.
                             McGivney & Kluger, PC
20                           23 Vreeland Drive
                             Florham Park, NJ 07932
21                           (973)822-1110
                             fderby@derbyandassociates.com
22

23

24

25
```

1                         I  N  D  E  X

2

Proceeding                                              Page

3       Proceedings                                       4

4       The Court's Ruling                                22

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

 1              (Commencement of proceedings at 9:41 A.M.)

 2

 3              THE COURT:  Hey, folks, Judge Clark here.  Let me

 4    say before we get started, we're on the record in Virginia

 5    Street Fidelco LLC, et al., versus Orbis Products Corp., et

 6    al. It's Civil Action Number 11-2057 (KM).  And it's 9:42 in

 7    the morning on November 14th, 2017.

 8              Can we have appearance of counsel for both sides,

 9    please.

10              MS. SAMMONS:  Good morning, Your Honor.  Diane

11    Sammons with the law firm of Nagel Rice on behalf of the

12    plaintiff Virginia Street Fidelco.

13              THE COURT:  Good morning.

14              MS. PLACIDE:  Good morning, Your Honor.  Christine

15    Placide of Maraziti Falcon on behalf of the City of Newark.

16              THE COURT:  Good morning.

17              MS. VOS:  Joanne Vos also from Maraziti Falcon --

18    plaintiff City of Newark.

19              THE COURT:  Ms. Vos, can you say that again.  You

20    dropped off.

21              MS. VOS:  I'm sorry.  Joanne Vos from Maraziti

22    Falcon for coplaintiff City of Newark.

23              THE COURT:  Good morning.

24              MS. VOS:  Good morning.

25              MR. SCAGNELLI:  On the defendant side, Your Honor,

1   it's John Scagnelli and William Sullivan for defendants

2   Robert Amaducci and Louis Amaducci and Flaroma Inc.

3            THE COURT:  Good morning.

4            UNIDENTIFIED SPEAKERS:  Good morning.

5            MR. DERBY:  Good morning, Your Honor, Frank

6   Derby -- for the defendant the Estate of Louis J. Amaducci.

7            THE COURT:  Good morning.

8            All right.  We have an issue that's come up,

9   defendants, Mr. Scagnelli specifically, on behalf of his

10  clients, wrote a letter, it's Document 180 on the docket

11  dated October 18th, 2017.  And the plaintiffs, Ms. Sammons'

12  firm specifically, responded, Document 182 on the docket, and

13  that's November 2nd, 2017.

14           Apparently, the issue is, as cast by Mr. Scagnelli,

15  that while the Court gave the plaintiff leave to supplement

16  their report of one expert, Mr. Greenberg, what the

17  appellant -- or what the plaintiff has done is gone much

18  further than that, according to Mr. Scagnelli, and has, in

19  fact, not only supplemented the Greenberg report, but has

20  referred to other expert exports that were never pro- --

21  well, another expert report that was never produced in

22  discovery and dates back to 2002.  And it also provided or

23  served a separate expert report by another expert, and that

24  other expert is named John H. Crow.

25           Is that -- that's right, Mr. -- does that

 1  essentially summarize it, Mr. Scagnelli?

 2          MR. SCAGNELLI:  Yeah, that's it, Your Honor.  If

 3  you like, I can kind of try to just basically focus that, and

 4  I think it's important that we look at the time frame here.

 5          So what we're basically dealing with is we're

 6  dealing with a new expert report for which leave to bring

 7  into the case was not sought, completely out of the blue.

 8  And so that's -- that's number one.

 9          And, number two, in Mr. Greenberg's, it's now, I

10  think, third supplemental report, he refers to a document

11  that is -- that he said was just produced or just found by

12  plaintiff City of Newark, and this is now three years after

13  the close of discovery.  So Greenberg's supplemental report,

14  as presented now, relies on a document which we don't have

15  and references now documents from the City of Newark that

16  haven't been produced to counsel in this case.

17          I think time -- the time frame here, I think is

18  important, just to kind put this in perspective.  We have the

19  close of fact discovery on September 14th of 2014.  That's

20  three years ago now.  Plaintiffs submit the first Greenberg

21  report in September of 2015.  Then the Court permits

22  plaintiffs to file a supplemental Greenberg in December 2015.

23  March 2016, the plaintiffs submit the second supplemental

24  Greenberg report.  Then in October -- now last year,

25  plaintiffs filed a motion to reopen discovery and supplement

|Teleconference and Ruling                                                    7
|11-cv-02057, November 14, 2017

1   their expert report based on their stated need for sampling.

2   They needed sampling to get all of the facts out about the

3   contamination at the site.

4         Now, this Court then writes a pretty lengthy

5   opinion in May of this year, Your Honor wrote it, giving

6   plaintiffs, even though -- even though defendants objected to

7   continuing to supplement the expert reports in this case.

8   But Your Honor said, all right, plaintiffs, go ahead.

9   Conduct the additional sampling that you want and we'll let

10  you file another supplemental report based on the sampling.

11        Deadlines for submitting that report comes up, and

12  instead of submitting a report based on sampling, plaintiffs

13  file a motion to bifurcate and -- bifurcate for a declaratory

14  judgment, to bifurcate and stay this case and stay the filing

15  of the expert report which they themselves requested.

16        Your Honor, on August -- in August of this year,

17  several months ago, denies plaintiff's motion and says, look,

18  we'll give you until -- we'll give you until the end of

19  September to file a supplemental expert report by Mr. -- for

20  Mr. Greenberg.

21        So what happens here?  The deadline comes up, and

22  we have, number one, a new expert, completely out of the

23  blue, no leave sought to bring in another expert in this

24  case.  Defendants know nothing about this.  So we have a new

25  expert report out of the blue.

|Teleconference and Ruling
|11-cv-02057, November 14, 2017                                                     8

1          And then Mr. Greenberg does file a supplemental

2    expert report, but this report is based upon an important

3    document.  And if you read the -- send the letter,

4    Your Honor, that we sent in, an important document, which the

5    City of Newark supposedly, they say, just discovered out of

6    an old file.

7          Now, we don't have any of this information.  So we

8    have a supplemental Greenberg report based upon a document

9    not provided in discovery in this case, and discovery closed

10   three years ago, and --

11         THE COURT:  And the document that wasn't provided

12   in discovery, is that -- I understand that's another expert

13   report?

14         MR. SCAGNELLI:  No, that is -- no, it's not.

15   That -- no, what that is, Your Honor, is actually -- I think

16   it's a remedial action report for this site.  And I believe

17   it's dated 2002.  It's really, I think, an attachment of one

18   of the annexes the letter was --

19         THE COURT:  Okay.  It's a report of -- it's a

20   report of some sort.  You say a remedial action report?

21         MR. SCAGNELLI:  Right.

22         THE COURT:  Okay.  Go ahead.

23         MR. SCAGNELLI:  Right.  And that Greenberg says

24   that this is a critical, important report, and he

25   basically -- or he basically structures his entire

1    supplemental report against it.

2            So what's going on here?  The excuse -- first they

3    want sampling and the supplemental report based on the

4    sampling.  They come in and say -- then they say, if you

5    remember, Your Honor, they can't do sampling because there

6    are these mounds of dirt on the site.  They can't do

7    sampling, which is -- which was sort of the predicate for

8    them to try to convince the Court to stay their need to file

9    an expert report.

10            The Court denies that.  And now we're in a

11    situation where all of a sudden we have a new expert, leave

12    is not sought, and we have a supplemental report of the

13    expert that they do have, based upon a document not in

14    evidence.

15            I mean, based upon -- we think now, based upon

16    what's happened and based upon the case law, we have an

17    opinion from Joe Rosen in -- that we cited, and we have a

18    second opinion that we attached to the letter we provided to

19    Your Honor, we think the -- we think at this point, the Court

20    should simply bar the introduction of the new expert and the

21    new expert report, and also bar at this late date the --

22    their new supplemental report based upon a document not

23    produced in discovery.  It's as simple as that.

24            And then tee up this case for a pretrial so we can

25    get it finished.  It seems every time we try to get to the

1  point of getting this case over with, the plaintiffs come up

2  with a new maneuver.  And it's --

3          THE COURT:  Well, let me --

4      (Simultaneous conversation)

5          THE COURT:  Let me ask you --

6          MS. SAMMONS:  Your Honor, if I may?

7          THE COURT:  Well, let me just -- Ms. Sammons, I

8  won't -- I won't deprive you of the opportunity to respond.

9  But let me ask Mr. Scagnelli something.

10         Mr. Scagnelli, obviously, you want the Crow report

11 to not be served or to be stricken or to be precluded.  I

12 understand that.

13         But with respect to the Greenberg report, I mean,

14 you want the whole thing -- you want the whole thing

15 stricken.  Is there a way that you might propose to permit

16 the report to be served and to be part of this, but to

17 somehow excise what -- what was based upon new and unproduced

18 evidence?

19         MR. SCAGNELLI:  I think so, Your Honor.  That would

20 be fair.  I mean, I think we have the original expert report.

21 We took Mr. Greenberg's deposition about that.  We have the

22 second -- I guess the supplemental reports already.  I think

23 that would be appropriate to remain in the case.

24         It's just this third and last supplemental report,

25 based upon documents which have not been produced in this

 1   case, which I think we want precluded.  I mean, we have no

 2   problem with Mr. Greenberg appearing as plaintiff's expert

 3   and testifying on their behalf.

 4            THE COURT:  No, but I'm asking on this third

 5   report, is there any way to permit -- you know -- and I'm

 6   only asking for your view of things.  Obviously, I'm going to

 7   get Ms. Sammons' take on all this.  But is there any way --

 8   you're just asking that I blithely say, look, Mr. Greenberg,

 9   your third report, it's out because it's based on, at least

10   in part on new evidence.  Is there a way to -- I don't

11   know -- excise the part that's based on new evidence and

12   still have what he did as a supplemental report?

13            MR. SCAGNELLI:  All right.  All right.  All right.

14            THE COURT:  You know what I'm saying?

15            MR. SCAGNELLI:  Yeah, no, I understand the

16   question, Your Honor.  The -- basically, for this last report

17   is based on upon the new evidence.  And that's our

18   understanding in reading it, that's basically its sole

19   purpose is all it is.  That's really all it is.  So excising

20   that wouldn't affect the prior reports, it seems to us.  I

21   mean, that's the point number one.

22            If we were to permit it, what we would have to see

23   would be City of Newark to produce all this new evidence that

24   they supposedly found, including -- you know, because we're

25   concerned there's some other -- there may be some other

 1  information out there that we need to have to prepare for

 2  trial.  And then we have to take Mr. -- be given leave to

 3  take Mr. Greenberg's deposition as to this -- you know, this

 4  third report based on that.  I mean, that would be the way to

 5  handle it.  I mean, it's Your Honor's call.

 6          THE COURT:  Well, I understand.

 7          All right.  Ms. Sammons, say -- you've been waiting

 8  patiently.  So let's hear from you.

 9          MS. SAMMONS:  Well, Your Honor, our first position

10  is I think, this is an exaggerated position on behalf of

11  Mr. Scagnelli about a new report and also about the

12  additional Crow report.  In this Court's May 30th order, the

13  Court did not provide that a report could only be done by one

14  person.  It didn't say that.  It said that we were entitled

15  to do a report.  And that report --

16          THE COURT:  Well, let me -- let me ask you -- I

17  don't mean to interrupt, but --

18          MS. SAMMONS:  Sure.

19          THE COURT:  -- but I -- right in the report on

20  page 7, I say, the Court grants plaintiff's motion to reopen

21  discovery for the limited purpose of supplementing the

22  Greenberg report.  That was it.

23          MS. SAMMONS:  That's correct, Your Honor, and

24  supplementing the Greenberg report, we believe that Crow's

25  report does just that, along with Mr. Greenberg's report.

1    Mr. Crow was brought in because he has familiarity

2  with the property, he's done work on a adjacent piece of

3  property, and so it rounds out Greenberg's report.  To act

4  like this is a whole new, you know, look at a report is just

5  incorrect.  Mr. -- the second report certainly just

6  coordinates and dovetails with the report that Greenberg did.

7  And the Court did not say we couldn't produce two reports.

8    Moreover --

9    THE COURT:  Well, I didn't -- I didn't say a lot of

10  things.  I mean, I didn't say that you can take a vacation

11  next summer to Bermuda, but that doesn't mean I approve of

12  that or I disprove of it.  I didn't say anything of the kind.

13    MS. SAMMONS:  I understand that, Your Honor.  But

14  it's a two-page report.  It -- we're not talking about a

15  report that looks at more sampling data, that he goes out to

16  the site and does -- you know.  He's relying on the documents

17  that have already been provided in this report.  And he's

18  giving his opinion based upon that.  It's literally a

19  two-page report.  So to act like this is a huge surprise, I

20  think overstates the issue.

21    I mean, at the end of the day, what we're trying to

22  do is get as much information as we possibly can to get a

23  damage profile together.  And to me, looking at that report,

24  this is not an extensive report that Mr. Scagnelli can't

25  respond to, his expert can't respond to.  There's no

1  indication that there's anything sophisticated he needs to do

2  to respond to this report.  There's no new testing that

3  actually Mr. Crow does.

4          Mr. Crow essentially offers a view of

5  Mr. Greenberg's report.

6          THE COURT:  But now aren't I -- you know, if I'm to

7  accept your approach to all this, don't I open the universe

8  to a deposition of Mr. Crow?  I mean, we'll be doing this for

9  the rest of time.

10          MS. SAMMONS:  Well, let's talk about that,

11  Your Honor.  You've already provided them with 30 days to

12  provide a responsive report -- or I think it's 30 or 60 days.

13  I'm sorry.  I'm not really clear which it is.  But they have

14  time to do that.

15          To provide a deposition, typically is an additional

16  30 days.  At this stage of the game, I don't think that

17  delays us from moving forward in April to provide a pretrial

18  or moving forward quickly to provide a pretrial.

19          What we're talking about potentially is providing

20  another opportunity to do a deposition, which I assume the

21  Court would have considered with regards to Mr. Greenberg's

22  additional report.  So to throw Mr. Crow in there should --

23  you know, if they desire to do that, I don't think it's

24  asking for that grave an extension of time to do that.  And I

25  think it can all be wrapped up within a 60-day period, which

1  was roughly the same time frame that Court had -- had

2  organized for the expert material to be completed by.

3          THE COURT:  Well, let me ask you, Ms. Sammons, I --

4  I asked Mr. Scagnelli, on the updated -- on the updated

5  Greenberg report, he, you know, allegedly bases the report on

6  new -- newly found -- on a newly found report from 2002.  Is

7  that the sum and substance of what his new report is?  Like

8  there would be no way of, say, removing reference to that

9  2002 report and having -- and having Greenberg's report have

10  any meaning?

11          MS. SAMMONS:  You know, I think that's probably --

12  I think that's probably accurate.  But I'd like to get into a

13  little bit of the detail about the report that he relies on.

14          So, you know, there was testing done.  There were

15  four prior -- four prior tests upon which everybody has

16  relied on for their expert reports.  Within that test, there

17  was apparently testing done by -- Envirotactics, and they did

18  report that was in -- I think one was done in 2000, and then

19  there was another done in 2002.

20          So we have the first one has been part of all the

21  discussion back and forth.  The second one was discovered

22  apparently in the archives of the City when there was a

23  meeting -- I want to say the end of August --

24          MS. VOS:  Can I ask -- I just -- I want to clarify

25  that.  I mean, you can go ahead and finish your point, but

1    I'm going to need to clarify that.

2          MS. SAMMONS:  Okay.  So with regards to that

3    report, I -- again, that report has additional sampling in it

4    that we didn't have before, which was the whole point of

5    potentially seeking to do an additional expert report.

6          So if the additional sampling's done already --

7    and, again, it's not an extensive report, but if the

8    additional sampling's done already, that was the whole

9    purpose of -- or one of the purposes of doing a supplemental

10   report.

11         So to let go of that at this point would seem to

12   defeat the whole point of doing a supplemental expert report.

13         And, yeah --

14         THE COURT:  Okay.  All right.

15         MS. SAMMONS:  So --

16         THE COURT:  So I understand.  Keep going.

17     (Simultaneous conversation)

18         MS. SAMMONS:  Say something.

19         MS. VOS:  Yeah, I just wanted to clarify something

20   about the, quote/unquote, discovery of that 2002

21   Envirotactics report, which was prepared for City.

22   Originally, I thought that that report came from some

23   archived files from the CEDC, which is a sort of a private

24   offshoot of the City, if you will, that typically markets

25   City-owned property.  It's for purposes of redevelopment.  It

 1  used to be known as Brick City.  Now it's called the Economic

 2  Development Corporation.

 3           But -- and I offer this to you not as an excuse,

 4  Your Honor, but as an explanation as to where this report

 5  came from.  I thought it was in there in the archives, which

 6  we didn't learn about until a meeting that was had in early

 7  September.  But when I looked back in my files, it looks like

 8  the report came from EPA over the summertime.  I had a

 9  conversation with -- I think he's like a project manager at

10  EPA who was aware of the site, who reached out to me over the

11  summer to talk about the site and the soil piles.  And he

12  told me at that time about this report.  And he sent it to

13  me.

14           I frankly thought nothing of it.  And having just

15  been substituted in as counsel for prior special

16  environmental counsel, assumed it would been in the mix.  But

17  apparently it wasn't.

18           And so what we did find in archived files that

19  became known to us following that early September meeting at

20  the City was a letter from DEP that apparently references

21  this 2002 report but not the actual report.  The report

22  actually came from the EPA.

23           Now, I don't know if the City had it independently

24  or not.  But it doesn't look like they did.

25           So I just wanted to clarify that one point, because

1    I -- you know, there's no subterfuge or strategy here.

2    That's just an explanation as to the genesis of that report.

3              THE COURT:  All right.

4              MR. SCAGNELLI:  Your Honor, can I -- can I make a

5    just a brief response on this, if you would entertain me.

6              THE COURT:  This is Mr. Scagnelli?

7              MR. SCAGNELLI:  Yeah, I mean, basically, as far as

8    Mr. Crow, the new expert, Your Honor, I don't think any

9    counsel in this case or this Court contemplated that there

10   would be a new expert other than Mr. Greenberg.  And I think

11   Your Honor's May 30th decision makes that clear.  You state:

12   Plaintiff's motion to reopen discovery for the limited

13   purpose of supplementing the Greenberg report.

14             So to say somehow that it was implicit that

15   plaintiffs could come up with a new expert, I just don't

16   accept.

17             The second point about the additional documents

18   that Ms. Vos has just spoken about for the City of Newark,

19   the proper procedure would have been if they found new

20   documents and this new report, what you do is you immediately

21   send a letter to counsel, you produce the documents in

22   advance of having the documents referenced in the third

23   supplemental report.

24             The only -- we learned about the new documents only

25   in Mr. -- by Mr. Greenberg's writing.  So that's not the way

1   to proceed here.

2          So, you know, it seems like every time we get

3   through these -- we -- the Court, you have these conferences,

4   we have an issue, and then something else happens down --

5   that they come -- down the line to disrupt the orderly

6   progress of this case up for trial.  And that's my problem --

7   our problem with it.

8          THE COURT:  All right.  Anything further,

9   Ms. Sammons?

10         MS. SAMMONS:  Your Honor, I would just say as

11  court -- as discovery -- as cases continue over a

12  three-and-a-half-year period, there are things that happen.

13  And some of these things, plaintiffs cannot control.  So, for

14  instance, the fact that there was new dumping at the site, we

15  certainly cannot control that.  The fact that the EPA has an

16  additional report that shows up in the midst of us trying to

17  prepare the supplemental expert report, you know, is not

18  something we can control.

19         So from that standpoint, procedurally, yes,

20  Mr. Scagnelli, perhaps, the proper way to do that would been

21  to notify the Court immediately about this new document and

22  not have it show up in an expert report, but that didn't

23  happen.  And the time -- delay was limited.

24         So we are here.  The goal here is to provide, you

25  know, good data for the expert report and to try to do that

|Teleconference and Ruling
|11-cv-02057, November 14, 2017

1   in a timely fashion.  We don't believe that there is

2   prejudice here.  And we urge the Court to allow them the time

3   they need to respond to this.  And if that requires a

4   deposition, we're happy to proceed to do that in a very

5   orderly and quick fashion.

6           MR. DERBY:  I'm sorry, Judge.  It's Frank Derby.

7   Might I be heard?

8           THE COURT:  Sure.

9           MR. DERBY:  I'm sorry.  I think that the

10  plaintiff's presentation here is very slick, but I think

11  ultimately unpersuasive.  We are three years past the close

12  of fact discovery.  And the City has now identified, perhaps,

13  one or two other repositories of potentially relevant

14  historical information that they cannot report today does not

15  exist.

16          I think at some point, we are talking about

17  something that is far more than circumstances outside of

18  counsel's control.  This now sounds as if it is plaintiff's

19  failure to investigate wholly, the failure to prevent

20  spoliation on the property site in the form of the additional

21  dumping.  And, certainly, if we were talking about

22  electronically stored documents or something similar that has

23  raised spoliation issues in the past or even now in the

24  current litigation landscape in other cases, we would be

25  looking at talking about orders of preclusion as a matter of

|Teleconference and Ruling
|11-cv-02057, November 14, 2017

1   course.

2           I don't think that this is just a question of a

3   little bit more time, Judge, and we'll get it right now.  I

4   think at some point, we have to -- we're now looking at

5   another deposition of Mr. Greenberg and a deposition of

6   Mr. Crow, and this is after expert discovery was supposed to

7   have been well concluded and only reopened for the purpose,

8   for the express purpose of allowing additional sampling.

9           So the fact that the plaintiffs would need to

10  request to reopen expert discovery based on the need to

11  conduct traditional sampling and that the Court granted that

12  request is a version of judicial estoppel.  They are now

13  precluded from saying that Mr. Greenberg's report is

14  somehow -- meets the standard under which the Court allowed

15  them to produce a new report, when it doesn't conduct any

16  additional sampling.  And at some point, we do need to draw a

17  hard line in the sand and say, it's too late.

18          THE COURT:  All right.

19          Anything further, Ms. Sammons?

20          MS. SAMMONS:  No, Your Honor, other than, you know,

21  to bring up the word "spoliation," I think is more than

22  extreme in this particular case.  We have provided defense

23  counsel, as we are able, with information, as it becomes

24  available.  There was a change in counsel.  Again, not within

25  our control.  And so, yes.  And the Court specifically

1    allowed us to provide a supplemental report.  And the

2    supplemental report envisioned potentially additional

3    sampling, and that's what we have here.  And a 30-day delay

4    or a 45-day delay, which the Court had built into the

5    schedule in any event for Mr. Scagnelli to respond, it seems

6    to me there is no significant prejudice to Mr. Scagnelli and

7    his team regarding this particular report.

8              THE COURT:  All right.  I think I've heard enough

9    from everybody.

10             Look, I -- when I ordered back in May, the -- or

11   when I permitted Mr. Greenberg to supplement his report, it

12   was based upon the representation that we needed to do

13   testing at this site.  And this was very important to the

14   plaintiffs, and, you know, that that would be the sole

15   purpose of all of this.  And I did -- I did so rather

16   reluctantly.  This is a -- this is a 2011 case.  It's been

17   kicking around for six years.  Every time we turn around,

18   there's a new problem, and we have to -- we have to push

19   things off.  We have to extend deadlines.  We have to do more

20   discovery.  I was really right about the end of my patience

21   back in May when I granted that -- when I granted plaintiffs

22   leave to have that Greenberg report supplemented.

23             Suddenly two months later, I'm told that, well,

24   that place has been -- there's been dumping there.  We can't

25   do effective sampling.  We want to stay things.  Plaintiff

1  wants to stay things.

2        I think the very fact that the plaintiff requested

3  to stay things at that point in some respects underlay the

4  understanding of everybody, plaintiff, defendant, and the

5  Court, that this was a very limited exercise, that I was

6  going to allow you to sample, and I was going to allow you to

7  supplement.

8        When you said you couldn't sample, I almost believe

9  that, well, that that's the end of this.  We're not going

10 to -- we're just going to move on.  But you pressed, and you

11 said, well, if I can't do that, I want to still supplement

12 Greenberg's report.

13       Okay.  I gave you the leave to supplement the

14 Greenberg report, expecting that there might not be very much

15 to do because we -- you know, the representation we couldn't

16 do any sampling.

17       Now, a couple of months later, I'm told that we've

18 got a new expert who's involved, we've got documents that

19 miraculously showed up in September that help us with our

20 concerns on sampling, and, you know, the fact that they

21 weren't around is not anybody's fault and it's -- it's --

22 with changes in counsel, the circumstances, fortunes of war

23 and everything else.

24       I'm not -- I'm not sold that these reports should

25 be accepted.  I'm inclined to agree with Mr. Scagnelli at

1    this point.  I was rather forgiving back in May, and as I

2    said, rather reluctant to yet again permit an amendment to

3    the Greenberg report.  And I think it was very clear to

4    everyone that it was very limited.  I didn't say, Greenberg

5    can amend his report and, you know, we can amend it by using

6    other experts to amend.  That's ridiculous.  That's not what

7    I meant in any -- in any honest appraisal of what went on

8    back in May.

9             So I'm a little troubled by fact that we have got

10   new experts submitting reports at this late date when I, you

11   know, at very least communicated to everybody that I was

12   allowing the Greenberg report to be amended for very limited

13   purposes.  And I think it was pretty clear, the tone of the

14   opinion, what was said in the opinion was I did not expect

15   all of this new stuff to crop up and all of these new reports

16   to pop up with new issues and new documents and new facts.

17            And so I am not inclined -- at this point, for me,

18   for the Court, I think enough is enough.  I am not going to

19   allow the supplement to Mr. Greenberg's report.  I did that

20   almost as an actuality or mercy or charity, because the

21   plaintiff, you know, based on the results of the Florida

22   litigation, insisted, oh, we've -- you know, we've got to go

23   revisit the sampling.

24            If the sampling's not possible now, well, then it's

25   not possible.  We'll have to go with what we've got.  And if

1    you can't supplement the Greenberg report -- Mr. Greenberg

2    can't supplement it himself, because he doesn't have samples,

3    well, then, that's the end of it.  He can't supplement the

4    report.  We're not going to rely on new documents that were

5    never produced before.  We're not going to rely on new

6    experts, you know, and new expert reports.

7            So the new -- the new -- the third supplemental

8    report from Mr. Greenberg -- and I'm just going to -- I'm not

9    going to allow that to go forward, if it's based -- and I

10   have the representation from Mr. Scagnelli and then

11   Ms. Sammons confirmed it that without the new evidence, the

12   third supplemental Greenberg report is really of no value.

13   So I was thinking maybe I could excise the new evidence from

14   it and permit whatever else was in that report to stand as a

15   final supplemental report for Mr. Greenberg, but both sides

16   have told me that can't be done.  So I accept the

17   representation of both sides.  And I -- you know, I decide

18   here that we're not going to go with Mr. Greenberg's third

19   supplemental report.  Things are going to be the way they

20   were before this issue ever raised its head back in May.

21           And certainly, the Mr. -- the report by Mr. Crow, a

22   new expert, somebody nobody knew about, somebody I certainly

23   did not intend to authorize and I did not authorize by my

24   decision in May, we're not going to go forward with that

25   report either.  As far as I'm concerned, we're back where we

 1    were before this issue was ever raised, before I ever issued

 2    my May decision.  We are, in effect, done with expert

 3    discovery.  We've long been done with fact discovery.

 4           And the next thing I think we need to do is go to

 5    pretrial.  I'm going to have to give you -- I don't have my

 6    calendar in front of me, but I'm going to have to give you a

 7    pretrial date, probably sometime in January, and I'll give

 8    you a -- you know, I don't want to ruin your holidays.  I'll

 9    give you a chance to put together the pretrial order, because

10    I imagine it will be complicated in this case.  But we're

11    going to have to get that done.

12           And, you know, we talked about these new documents.

13    Ms. Sammons, you're right, the right way to do that would

14    have been to produce the documents, say that they're newly

15    discovered, and then seek leave to file a supplemental

16    report.  I'm not -- I don't think I would have granted leave

17    at this point, for the reasons I've already gone through, but

18    that's the right way to do things.  And you've as much as

19    recognized that that is the right way to do things.  And we

20    didn't do things the right way here.

21           To the extent you have new material, discovery

22    obligations and production obligations are ongoing, so I

23    imagine you, even at this late date, have to continue to

24    produce what you've found as long as you consider it

25    relevant.  But I'm not reopening discovery to, you know, have

1  a handful of additional fact discovery depositions or

2  additional expert depositions or anything like that.  This is

3  six years now.  We're at the end.  This is over.  We're done.

4  I'm moving forward to the pretrial.

5          That said, I will -- again, I'm not in my chambers,

6  I don't have my calendar in front of me, so we will put a

7  date probably towards the end of January for pretrial

8  conference.  I will give you dates for your submission of the

9  pretrial order.  If there are any problems with the dates,

10 you can certainly contact chambers, and we can tinker with

11 them.

12          But that's what the Court is inclined to do and

13 will do at this point in this case.

14          Do we have any other concerns or issues that we

15 need to raise today?

16          MR. SCAGNELLI:  No, Your Honor.

17          MR. DERBY:  No, Your Honor.

18          THE COURT:  Ms. Sammons?

19          MS. SAMMONS:  No, Judge.

20          MR. MONAGHAN:  Your Honor, good morning.  This is

21 Patrick Monaghan.  I was late trying to get on the call on

22 the -- I wasn't able to get in and then knocked over my water

23 on the desk, but I was on the call.  I appear for the Estate

24 Elena Duke Benedict.

25          THE COURT:  All right.  All right.  Well, then

|Teleconference and Ruling
|11-cv-02057, November 14, 2017                                          28

1   that's -- thank you all for calling in.  We will -- we will

2   have an order that reflects what we've said here today.  And

3   I will see you in a couple of months.

4             UNIDENTIFIED SPEAKERS:  Thank you, Your Honor.

5             THE COURT:  Take care.

6             (Conclusion of proceedings at 10:14 A.M.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           Certification

2          I, SARA L. KERN, Transcriptionist, do hereby certify

3     that the 29 pages contained herein constitute a full, true,

4     and accurate transcript from the official electronic

5     recording of the proceedings had in the above-entitled

6     matter; that research was performed on the spelling of proper

7     names and utilizing the information provided, but that in

8     many cases the spellings were educated guesses; that the

9     transcript was prepared by me or under my direction and was

10    done to the best of my skill and ability.

11         I further certify that I am in no way related to any of

12    the parties hereto nor am I in any way interested in the

13    outcome hereof.

14

15

16

17

18    s/ *Sara L. Kern*                    16th of November, 2017

19    _____    _____
      Signature of Approved Transcriber              Date

20

21
      Sara L. Kern, CET**D-338
22    King Transcription Services
      3 South Corporate Drive, Suite 203
23    Riverdale, NJ  07457
      (973) 237-6080
24

25